UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES CHAMBERS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:13CV2212 RLW |
| | ) | |
| JAY CASSADY, et al.,[1] | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Charles Chambers for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The Petition is fully briefed and ready for disposition.

### I. Procedural History

Petitioner Charles Chambers is currently incarcerated at the Jefferson City Correctional Center ("JCCC") pursuant to the judgment and sentence of the Circuit Court of the City of St. Louis, Missouri. (Resp't's Ex. 1 pp. 101-03) A jury found Petitioner guilty of one count of robbery in the first degree and one count of armed criminal action. The court sentenced him to 20 years' incarceration for robbery and 10 years' incarceration for armed criminal action, said sentences to run consecutively. (*Id.*) Petitioner appealed the judgment, and on November 30, 2010, the Missouri Court of Appeals modified the judgment in part and affirmed as modified. (Resp't's Ex. 9) Petitioner then filed a Motion to Vacate, Set Aside, or Correct Judgment or

---

[1] Because Petitioner is now confined at the Jefferson City Correctional Center ("JCCC") located in Jefferson City, Missouri, Jay Cassady, the Warden of that facility, is the proper party Respondent. Therefore, his name will be substituted as the named respondent in this action. 28 U.S.C. § 2254, Rule 2(a). In addition, because Petitioner is also challenging a consecutive sentence to be served in the future, Missouri Attorney General Joshua Hawley should also be named as a proper party Respondent. 28 U.S.C. § 2254, Rule 2(b). Future pleadings shall reflect these changes in the caption.

1

Sentence pursuant to Missouri Supreme Court Rule 29.15. (Resp't's Ex. 10 pp. 2-7) Appointed counsel filed an amended Rule 29.15 motion on March 8, 2012. (*Id.* at pp. 64-77) On March 16, 2012, the motion court denied Petitioner's motion for post-conviction relief. (*Id.* at pp. 78-83) On December 11, 2012, the Missouri Court of Appeals affirmed the judgment of the motion court. (Resp't's Ex. 13) On October 28, 2013, Petitioner filed the present petition for habeas relief in federal court.

## II. Factual Background[2]

On December 17, 2006 at approximately 1:20 a.m., Tim Pappas, the owner of the Chrome Bar in St. Louis City, along with four female employees, were cleaning and closing when two men with covered faces entered the bar and robbed Mr. Pappas at gunpoint. The men ordered Mr. Pappas and the three employees to lay face-down on the floor. One of the men removed Mr. Pappas' wallet from a pants pocket and ordered Mr. Pappas to remove the bundle of cash from another pocket. The bundle of cash contained approximately $500 plus some papers with written personal information, including federal and state tax ID numbers for the bar. Another employee, Kathy Mathes, was in the bathroom when the men entered the bar. She noticed the men, ran out the back door, and alerted the police. Meanwhile, the two men led Mr. Pappas and the three employees into a storage room, which the men barricaded with a table. Before leaving, the men also took Ms. Mathes' purse and a petty cash box.

A canine officer came to the scene where the two men had been spotted running. The dog tracked and located Petitioner Chambers hiding beneath a recycling bin approximately nine or ten blocks from the Chrome Bar. An officer returned Petitioner to the bar, but none of the victims could positively identify Petitioner. However, two of the victims indicated that they

---

[2] The Court sets forth the facts as stated in the Missouri Court of Appeals' opinion in *State v. Chambers*, 330 S.W.3d 539 (Mo. Ct. App. 2010).

recognized Petitioner's facial hair. An officer searched Petitioner and found Mr. Pappas' bundle of money. One of the bills contained bloodstains that matched Mr. Pappas' DNA. The police recovered Mr. Pappas' wallet, Ms. Mathes' purse, the cash box, two guns, gloves, a hat, and a sweatshirt in a backyard approximately six blocks from the Chrome Bar.

During the jury trial, Mr. Pappas and the three other victims held at gunpoint testified for the State, along with police officers, forensic scientists, and firearms examiners. Petitioner offered testimony from a friend, who testified that Petitioner was staying at her home the night of the robbery. Petitioner also testified on his own behalf, stating that he left his friend's house around 1:00 or 1:30 a.m. to go for a walk. During his walk, a man ran past him on the sidewalk. Petitioner then saw a bundle of money wrapped with a rubber band, and he picked it up. Petitioner was arrested shortly thereafter. He told the officers that the money came from SSI checks and working odd jobs. The jury found Petitioner guilty of first-degree robbery and armed criminal action, and the trial court sentenced him as a prior and persistent offender.

### III. Petitioner's Claims

In his Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus, Petitioner raises eleven claims for federal habeas relief. Grounds 1, 9, and 10 are related and challenge the State's cross-examination of Petitioner using his post-*Miranda* silence to impeach him. He raises claims of trial court error (Ground 1), ineffective assistance of trial counsel (Ground 9), and post-conviction motion court error (Ground 10). In Ground 2, Petitioner contends that the trial court erred in submitting Instruction 9 pertaining to Petitioner's prior offenses. Petitioner asserts in Ground 3 that the trial court erred in overruling defense counsel's objection to the State's closing argument asking the jurors to put themselves in the victims' position. Ground 4 alleges trial court error in entering a written judgment and sentence that differed from the oral

sentence. In Ground 5, Petitioner contends that he was denied effective assistance of trial counsel for several reasons. Petitioner alleges in Ground 6 that he was denied effective assistance of appellate counsel. In Ground 7, Petitioner asserts that the prosecuting attorney withheld exonerating evidence. Ground 8 alleges that Petitioner was denied his right to a fair and impartial jury trial. Finally, Petitioner contends in Ground 11 that he was generally denied an adequate appeal and post-conviction proceeding and that he is innocent.

## IV. Legal Standards

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999). "[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, a federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Owens*, 198 F.3d at 681 (quoting 28 U.S.C. § 2254(d)(1)). Findings of fact made by a state court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See also Gee v. Groose*, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). With

4

regard to the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *see also Bucklew v. Luebbers* 436 F.3d 1010, 1016 (8th Cir. 2006); *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006). In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Williams*, 529 U.S. at 411.

To preserve a claim for federal habeas review, a petitioner must present the claim to the state court and allow that court the opportunity to address petitioner's claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citation omitted). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* A federal court will consider a defaulted habeas claim "only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.*

## V. Discussion

### A. Use of post-*Miranda* silence to impeach Petitioner

Petitioner alleges in Grounds 1, 9, and 10 that the trial court erred, trial counsel was ineffective, and the post-conviction motion court erred regarding the State's cross-examination of Petitioner. Specifically, Petitioner contends that the trial court should have granted a mistrial or sustained counsel's objection when the State used Petitioner's post-arrest silence pertaining to why he did not tell the police that he found Mr. Pappas' wallet in order to impeach Petitioner. Likewise, Petitioner argues that trial counsel was ineffective for failing to introduce evidence

5

that Petitioner had invoked his right to remain silent. In addition, Petitioner asserts that the motion court erred in denying Petitioner's ineffective assistance of trial counsel claim. Respondent argues that these claims fail on the merits.

On direct appeal, Petitioner alleged:

> the trial court erred in overruling his request for a mistrial when the prosecutor asked [Petitioner] during cross-examination why he did not inform the police that he found Mr. Pappas's money on the sidewalk. Defendant contends that the prosecutor's inquiry improperly elicited evidence of [Petitioner's] post-arrest silence for the purpose of impeaching [Petitioner's] testimony and permitted the jury to draw an improper adverse inference from [Petitioner's] post-arrest silence.

*Chambers*, 330 S.W.3d at 542. The Missouri Court of Appeals noted, "[t]he State may not use an accused's silence, at the time of arrest and after receiving *Miranda* warnings, for impeachment purposes." *Id.* (citing *Doyle v. Ohio*, 426 U.S. 610, 618 (1976)). However, in the absence of the affirmative assurances expressed in the *Miranda* warnings, "a State does not violate due process of law by cross-examining a defendant as to his postarrest silence when that defendant chooses to take the stand." *Id.* at 542-43. (citation omitted). The *Chambers* court noted that Missouri law allows the State to use a criminal defendant's immediate post-arrest, pre-*Miranda* warning silence for impeachment purposes "'when a neutral expectancy of an exculpatory statement exists as a result of a defendant's testimony and defendant's silence is probative of inconsistencies in that testimony.'" *Id.* at 543 (quoting *State v. Antwine*, 743 S.W.2d 51, 69 (Mo. 1987)).

The *Chambers* court then noted that Petitioner chose to take the stand and testify in his own defense. When questioned by the State on cross-examination regarding whether he told the police anything about finding money, Petitioner stated that he did not mention anything about finding the money. *Id.* at 543-44. Defense counsel objected and moved for a mistrial, arguing that the prosecutor was commenting on Defendant's post-arrest silence in violation of his

6

constitutional rights. *Id.* However, the trial court overruled the objection and denied the motion for a mistrial. The Missouri Court of Appeals agreed with the trial court, reasoning:

> Nothing in the record indicates, nor does [Petitioner] allege, that [Petitioner] received *Miranda* warnings before he told police officers that the source of the money in his pockets was odd jobs and SSI checks. Since the record does not reveal when, if ever, police issued [Petitioner] his *Miranda* warning, we assume the warning was not issued before the time of [Petitioner's] impugned silence. *State v. Graves,* 27 S.W.3d 806, 810 (Mo.App. W.D.2000).
>
> Also, the nature of [Petitioner's] claim that he found Mr. Pappas' money on the sidewalk raises a reasonable expectation that he would have related that information to the police to avoid suspicion that he committed the robbery in question. *See State v. Hill,* 823 S.W.2d 98, 101 (Mo.App. E.D.1991). As a result, [Petitioner's] silence was probative of inconsistencies in his testimony. *See Antwine,* 743 S.W.2d at 69. We therefore find that the use of [Petitioner's] previous silence for impeachment purposes was proper, and the trial court did not err in overruling his objection. Point denied.

*Id.* at 544.

The Court finds that the state court's findings are not contrary to, nor do they involve an unreasonable application of, federal law. Under *Doyle*, "the use for impeachment purposes of petitioner's silence, at the time of arrest and after receiving Miranda warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." 426 U.S. at 619. However, the United States Supreme Court has recognized exceptions to *Doyle*. In *Anderson v. Charles*, the Supreme Court held that "*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent." 447 U.S. 404, 408 (1980). In *Fletcher v. Weir*, the Supreme Court held that due process of law is not violated where a State permits cross-examination as to postarrest, pre-*Miranda* silence when a defendant chooses to take the stand. 455 U.S. 603, 607 (1982).

Here, the Missouri Court of Appeals noted that the record did not indicate, nor did Petitioner allege, that he received a *Miranda* warning before informing the police that the money in his pockets came from SSI checks and odd jobs. *Chambers*, 330 S.W.3d at 544. This finding of fact is entitled to a presumption of correctness, and Petitioner has not offered any evidence rebutting this presumption by clear and convincing evidence. Further, the Court finds that the state court properly applied federal law to hold that the use of Petitioner's silence for impeachment purposes was proper and did not violate his constitutional rights. *Id.* The state court followed United States Supreme Court precedent allowing pre-*Miranda* silence to be used for impeachment purposes and reasonably applied that precedent to Petitioner's case. *Fletcher*, 455 U.S. at 607. Thus, the Court finds that Plaintiff's claim of trial court error for overruling counsel's objection and denying the motion for a mistrial based on Petitioner's cross-examination lacks merit and is denied accordingly.

Further, the Court finds that Petitioner's claim that trial counsel was ineffective for not admitting evidence that Petitioner had been advised of his *Miranda* rights prior to his silence also fails. To establish ineffective assistance of counsel, Petitioner must demonstrate that counsel's performance was "deficient" and that such deficient performance "prejudiced" his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006) (citing *Strickland*, 466 U.S. at 689). The prejudice prong requires Petitioner to prove that but for counsel's deficiency, the outcome of his trial would have been different absent counsel's error. *Id.* at 694; *Bucklew*, 436 F.3d at 1016. In other words, Petitioner must demonstrate "that

counsel's errors were so serious that they rendered the proceedings fundamentally unfair or the result unreliable." *Bucklew*, 436 F.3d at 1016 (citation omitted).

Here, Petitioner is unable to show deficient performance or prejudice sufficient to demonstrate ineffective assistance of counsel. In his post-conviction motion, Petitioner argued that trial counsel was ineffective for failing to present evidence that Petitioner was advised of his right to remain silent and invoked that right. Petitioner asserted that his conviction would have been reversed because the State asked him on cross-examination about his failure to tell the police how he found the roll of money when he was arrested. (Resp't's Ex. 10 pp. 83-84) However, the motion court found that counsel was not ineffective for failing to present such evidence because eliciting testimony about the source of the money was a matter of trial strategy, and evidence of *Miranda* warnings would not have affected the outcome of the trial. (Resp't's Ex. 10 pp. 86-87) Likewise, the Missouri Court of Appeals affirmed the motion court, finding that Petitioner voluntarily made a statement to the police about the money he found after the alleged *Miranda* warning. *Chambers v. State*, 387 S.W.3d 412, 413 (Mo. Ct. App. 2012). Thus, the *Chambers* court reasoned that "it was proper to impeach him with inconsistencies between his trial testimony and his prior voluntary statement to the police, even if the impeachment revealed that [Petitioner] was initially silent about finding certain money." *Id.* (citing *State v. Antwine*, 743 S.W.2d 51, 70 (Mo. 1987)). The *Chambers* court held, "[w]hether trial counsel elicited information that [Petitioner] had received his *Miranda* warnings would not have changed the evidence presented to the jury" and affirmed the judgment dismissing Petitioner's Rule 29.15 motion. *Id.*

The Court agrees that even if counsel had admitted into evidence Petitioner's invocation of his right to remain silent, the outcome of the trial would not have been different. Similar to

9

*Anderson v. Charles*, the question posed to Petitioner on cross-examination was "not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement." 447 U.S. at 409. Here, Petitioner told police officers that the money came from working odd jobs and an SSI check. On the witness stand, however, Petitioner stated that he found the money on the sidewalk. (Resp't's Ex. 5 p. 58-59) The State then asked Petitioner why he explained the other money on his person yet he did not mention finding the bundle of money to the police. (*Id.* at 59) This questioning did not refer to Petitioner's exercise of his right to remain silent but to explain why he did not tell the police about where he found the bundle of money. The questioning was in direct reference to Petitioner's testimony. Thus, *Doyle* does not apply to the facts of this case, and counsel was not ineffective for failing to admit into evidence Petitioner's *Miranda* invocation. *See Anderson*, 447 U.S. at 409 ("Each of two inconsistent description of events may be said to involve 'silence' insofar as it omits facts included in the other version. But *Doyle* does not require any such formalistic understanding of 'silence,' and we find no reason to adopt such a view in this case."). Therefore, the Court finds that counsel's failure to admit such *Miranda* evidence was not unreasonable, and such admission would not have changed the outcome of the trial, as the jury was entitled to hear the impeachment testimony. *Strickland*, 466 U.S. at 687. Thus, Petitioner's ninth ground for habeas relief is denied.

Likewise, the motion court did not err in finding that counsel was not ineffective. As previously stated, habeas relief may not be granted unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Owens*, 198 F.3d at 681 (quoting 28 U.S.C. § 2254(d)(1)). "Therefore, we will not grant [petitioner's] habeas petition unless the state court's decision in this case was contrary to, or an

unreasonable application of, the standard articulated by the Supreme Court in *Strickland*." *Id.*; *see also Bucklew*, 436 F.3d at 1016 (where state court correctly identifies *Strickland* as the controlling authority, federal courts "address whether the state court unreasonably applied that precedent and whether the state court unreasonably determined the facts in light of the evidence presented."). While the Rule 29.15 motion court did not cite directly to *Strickland*, the opinion demonstrates that the court did apply the *Strickland* standards. The motion court noted that defense counsel's elicitation of evidence regarding the source of the money was sound trial strategy and that presentation of *Miranda* warning evidence would not have affected the outcome of the trial. *See Strickland*, 466 U.S. at 687 (stating that to establish ineffective assistance of counsel, Petitioner must demonstrate that counsel's performance was "deficient" and that such deficient performance "prejudiced" his defense). Therefore, Petitioner's tenth ground for habeas relief will be denied.

### B. Jury Instruction 9

Next, Petitioner argues that the trial court erred in submitting Instruction 9 pertaining to Petitioner's prior offenses. Petitioner contends that the instruction, which listed his prior convictions, overemphasized his offenses and the number of times he committed them, thus making it more likely that the jurors would use that evidence as evidence of his guilt.

"Ordinarily, federal habeas relief is not available in cases of faulty jury instructions." *Aldridge v. Dormire*, No. 4:06-CV-1641 (CEJ), 2010 WL 883656, at *12 (E.D. Mo. Mar. 5, 2010) (citing *Estelle v. McGuire*, 502 U.S. 67, 71-72 (1991)). "State prisoners are rarely granted federal habeas corpus relief based on instructional errors, because '[the] formulation of jury instructions primarily concerns the application and interpretation of state law[.]'" *Staples v. King*, No. 09-987 (DSD/JSM), 2010 WL 3893614, at *8 (D. Minn. Sept. 14, 2010) (quoting

11

*Louisell v. Dir. of Iowa Dep't of Corrs.*, 178 F.3d 1019, 1022 (8th Cir. 1999)). "For a petitioner to obtain relief based on a faulty jury instruction, the instruction must 'so infect[ ] the entire trial that the resulting conviction violates due process.'" *Clemmons v. Delo*, 177 F.3d 680, 685 (8th Cir. 1999) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

Here, Petitioner has not demonstrated that the jury instruction was faulty or that its submission violated his due process. To the contrary, the Missouri Court of Appeals addressed this issue and found:

> "On claims of instructional error, an appellate court will reverse only if there is error in submitting an instruction and prejudice to the defendant." *State v. Forrest*, 183 S.W.3d 218, 229 (Mo. banc 2006). "MAI instructions are presumptively valid and, when applicable, must be given to the exclusion of other instructions." *Id.*; *see also* Mo. Sup. Court Rule 28.02(c) ("Whenever there is an MAI–CR instruction or verdict form applicable under the law and Notes On Use, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form.").
>
> MAI–CR 310.10 instructs the jury that a defendant's prior convictions may be considered for the sole purpose of deciding the defendant's credibility and the weight to be given his testimony. The instruction reads:
>
>> If you find and believe from the evidence that defendant (was convicted of) (was found guilty of) (pled guilty to) (pled nolo contendere to) the offense of [*specify the offense*], you may consider that evidence for the sole purpose of deciding the believability of the defendant and the weight to be given to his testimony and for no other purpose. (You must not consider such previous (conviction) (finding of guilt) (plea of guilty) (plea of nolo contendere) as any evidence that the defendant is guilty of any offense for which he is now on trial.)
>
> MAI–CR 310.10 directs the drafter to fill in the defendant's past offenses by stating "specify offenses." MAI–CR 310.10; *State v. Cantrell*, 775 S.W.2d 319, 322 (Mo. App. E.D. 1989). Neither the model instruction nor the Notes On Use suggests the drafter somehow limit or condense the recitation of the defendant's prior convictions. The instruction given in this case falls within a reasonable interpretation of the instruction to specify offenses. *See Cantrell*, 775 S.W.2d at 322. We therefore find that the trial court did not err in submitting Instruction 9. Point denied.

*Chambers*, 330 S.W.3d at 545.

The state court interpreted state law regarding the Missouri Approved Instructions ("MAI"). As stated above, jury instructions are a matter of state law, and this Court may not re-examine the state court's interpretation and application of the MAI instructions and Missouri case law regarding the model instructions. *Nunley v. Bowersox*, 784 F.3d 468, 471 (8th Cir. 2015); *see also Messier v. Steele*, No. 14-3164-CV-S-GAF-P, 2014 WL 4930653, at *6 (W.D. Mo. Oct. 1, 2014) ("Jury instructions involve questions of state law," and federal courts may not re-examine determinations by a state court on matters of state law). Further, the Court finds that the state court's decision was not contrary to, nor did it involve an unreasonable application of federal law. Nothing in Petitioner's pleadings demonstrates that the trial court's use of Missouri approved jury instructions violated federal law. Thus, Ground 2 regarding Instruction Number 9 is denied.

### C. The State's closing argument

In Petitioner's third ground for habeas relief, he claims that the trial court erred in overruling trial counsel's objection to the State's personalization in the closing argument by using the word "you" when discussing the victims' experience. Specifically, Petitioner refers to the prosecution's statement, "[a]nd you know what? When someone's facing you down on the ground and telling you not to look at them and pointing a gun to your head -- . . . And tells you not to look at them, you're not going to look at them." (Resp't's Ex. 5 p. 68) Petitioner argues that the statement induced jurors to render their verdict based on fear and not the evidence.

"A habeas petitioner must meet a high bar to obtain relief based on a prosecutor's comments during closing arguments. '[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the comments so

13

infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Briscoe v. Norman*, No. 4:11-cv-1154 JCH, 2014 WL 4204903, at *6 (E.D. Mo. Aug. 22, 2014) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks and citations omitted)). In the instant case, Petitioner raised this argument on appeal, and the Missouri Court of Appeals found:

> It is well-settled that a prosecutor may not personalize his or her argument to the jury. *State v. Storey*, 901 S.W.2d 886, 901 (Mo. banc 1995). This is because the jury must act objectively, without fear or prejudice. *State v. Raspberry*, 452 S.W.2d 169, 172 (Mo. banc 1970). "One way in which improper personalization results is when the prosecutor asks the jurors to place themselves or some other identifiable person in the shoes of the victim or at the crime scene." *Hall v. State*, 16 S.W.3d 582, 585 (Mo. banc 2000).
>
> In closing, the prosecutor asserted that Defendant believed he could rob Mr. Pappas and his employees and avoid identification by wearing hooded sweatshirts and forcing the victims to lie on the ground. The prosecutor then said, "And you know what? When someone's facing you down on the ground and telling you not to look at them and pointing a gun at your head—." Defense counsel objected on the grounds that prosecutor was "personalizing this argument," and the trial court overruled the objection.
>
> "The use of the word 'you' does not automatically amount to improper personalization." *State v. Lyons*, 951 S.W.2d 584, 596 (Mo. banc 1997) (quotation omitted). Considering the prosecutor's comments in the context of her argument, we find that she was explaining the eyewitnesses' difficulty in positively identifying Defendant. She was not asking the jurors to place themselves in the position of the victims and relive the crime. *See State v. Roberts*, 948 S.W.2d 577, 595 (Mo. banc 1997); *cf. Storey*, 901 S.W.2d at 901. The trial court did not err in overruling defense counsel's objection. Point denied.

*Chambers*, 330 S.W.3d at 545-46.

Here, the Court finds that the state court's determination was contrary to, or an unreasonable application of, clearly established federal law. The clearly established federal law with regard to prosecutorial misconduct is the United States Supreme Court's decision in *Darden*. *Herrod v. Steele*, No. 4:11-CV-01491, 2013 WL 1363757, at *7 (E.D. Mo. April 4, 2013) (citing *Darden*, 477 U.S. at 181). The Court agrees with the state court that the comments

14

referred to the victims' difficulty in identifying Petitioner and not asking the jurors to identify with the victims' fear. Indeed, the prosecutor was discussing what the victims were able to identify and remember such as the hoodies and facial hair. (Resp't's Ex. 5 p. 68) The Court finds that the comments were not so outrageous to render the trial fundamentally unfair, and the *Chambers* court's decision was not contrary to, nor an unreasonable application of clearly established federal law set forth in *Darden*. *See Boyd v. Steele*, No. 4:13CV257 CDP, 2016 WL 880389, at *3-*4 (E.D. Mo. Mar. 8, 2016) (finding prosecutor's closing argument stating that the crime of robbery affected every person in the city was not improper personalization, as it did not allude to personal danger that would befall the jurors and was not contrary to *Darden*); *Herrod*, 2013 WL 1363757 at *7 (finding the closing argument asking the jurors to imagine being raped was not sufficiently inflammatory to violate the Constitution). Therefore, the Court denies Petitioner's third ground as without merit.

### D. Written judgment differing from oral judgment

Petitioner next claims that the trial court erred in entering a written sentence and judgment that materially differed from the oral pronouncement. Specifically, Petitioner contends that the written judgment contained a clerical error and made the sentence on Count I consecutive to Count I, and the sentence on Count II consecutive to Count II, thus resulting in "circuituous" sentences. The Missouri Court of Appeals agreed with Petitioner and found that the oral pronouncement should control. Thus, the state court corrected the judgment "to reflect that the twenty-year sentence on Count 1 will run consecutive to Count 2, and the ten-year sentence on Count 2 will run consecutive to Count 1." *Chambers*, 330 S.W.3d at 546. Respondent has submitted the mandate from the Missouri Court of Appeals modifying the judgment to reflect confinement for 20 years on the first degree robbery count and 10 years on

the armed criminal action count, said sentences to be served consecutively. (Resp't's Ex. X, ECF No. 15-1) Because Petitioner received the relief requested, the Court dismisses Petitioner's fourth ground.

### E. Ineffective assistance of trial and appellate counsel

Petitioner asserts in Ground 5 that he received ineffective assistance of trial counsel because counsel failed to properly investigate the case, compel discovery, file appropriate motions, contact and present defense witnesses, properly take depositions of state witnesses, obtain expert witnesses, properly cross-examine, and make objections at trial. Petitioner also contends in Ground 7 that trial counsel worked in collusion with the prosecuting attorney. He claims that the ineffective assistance of counsel denied him a fair and impartial jury trial in Ground 8. Petitioner argues in Ground 6 that appellate counsel was ineffective for failing to present all the evidence for appeal or raise all available points on appeal. Petitioner also maintains that appellate counsel refused to discuss the appeal with Petitioner.

As stated above, to preserve a claim for federal habeas review, a petitioner must present the claim to the state court and allow that court the opportunity to address petitioner's claim. *Moore-El*, 446 F.3d at 896 (citation omitted). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The record shows that Petitioner raised Grounds 5 through 8 in his *pro se* post-conviction motion. However, Petitioner's amended Rule 29.15 motion did not include the *pro se* claims and raised only one claim of ineffective assistance of trial counsel. Therefore, because the ineffective assistance of trial and appellate counsel claims were not presented in the state court Rule 29.15 motion or on appeal from the denial of post-conviction relief, these claims are defaulted. *Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006); *see also Graves v. Cassady*,

No. 4:12-CV-1093-SPM, 2015 WL 5560356, at *6 (E.D. Mo. Sept. 21, 2015) (finding petitioner's ineffective assistance of counsel claim was procedurally defaulted where petitioner raised the claim in the *pro se* motion but post-conviction counsel did not include the claim in the amended Rule 29.15 motion); *Willis v. State*, 321 S.W.3d 375, 386 (Mo. Ct. App. 2010) (finding that *pro se* claims not incorporated in an amended motion for post-conviction relief are not properly before the state motion court).

Because Petitioner failed to properly present his claims of ineffective assistance of trial and appellate counsel to the state courts, he must show cause and prejudice to overcome his procedural default. Indeed, in his Traverse Petitioner acknowledges that these claims were not presented to the state court. However, Petitioner appears to argue that he can show cause for this failure because post-conviction counsel was ineffective for failing to raise the claims in the Rule 29.15 motion.

In *Martinez v. Ryan*, the United States Supreme Court held, "[i]nadequate assistance of counsel at an initial review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel." 132 S. Ct. 1309, 1315 (2012). When, as in Missouri,

> a State requires a prisoner to raise an ineffective-assistance- of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).

*Id.* at 1318. In addition, to overcome the procedural default, "a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.*

17

Here, to overcome Petitioner's procedural default, Petitioner must establish that his court-appointed counsel on collateral review was ineffective under *Strickland* and that the ineffective assistance of trial counsel claim is meritorious. The Court finds that Petitioner is unable to demonstrate cause sufficient to overcome the default. As stated above, to establish ineffective assistance of counsel, Petitioner must demonstrate that counsel's performance was "deficient" and that such deficient performance "prejudiced" his defense. *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Bucklew*, 436 F.3d at 1016 (citing *Strickland*, 466 U.S. at 689).

Petitioner has failed to demonstrate that post-conviction counsel's failure to raise general, non-specific claims of ineffective assistance of trial and appellate counsel was unreasonable. Petitioner baldly contends that, had post-conviction counsel raised all the *pro se* claims, those claims would have been more detailed. These conclusory allegations fail to demonstrate deficient performance on the part of post-conviction counsel.

Petitioner appears to argue that merely because post-conviction counsel did not raise every conceivable claim, counsel was ineffective. However, "[i]f, as with appellate counsel, 'one of [post-conviction] counsel's important duties is to focus on those arguments that are more likely to succeed, [then] counsel will not be held to be ineffective for failure to raise every conceivable issue.'" *Sutton v. Wallace*, No. 4:13-CV-1285, 2016 WL 4720452, at *10 (E.D. Mo. Sept. 9, 2016) (quoting *Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006)). Only where stronger issues are ignored is a petitioner able to overcome the presumption of effective assistance of counsel. *Id.* (citations and quotations omitted).

18

Nothing in Petitioner's pleadings or in the state court record indicates that these general allegations of ineffective assistance of counsel were stronger than the claim presented in the amended Rule 29.15 motion asserting that trial counsel was ineffective for failing to introduce evidence that Petitioner had invoked his *Miranda* rights. The Court finds that post-conviction counsel exercised reasonable professional judgment such that counsel's performance was not constitutionally deficient. Because Petitioner is unable to demonstrate that post-conviction counsel was ineffective, he cannot show cause sufficient to excuse the procedural default, and the Court need not address the merits of Petitioner's defaulted ineffective assistance of trial and appellate counsel claims. *Bonds v. Steele*, No. 4:15-cv-00136-JCH, 2016 WL 4177273, at *3 (E.D. Mo. Aug. 8, 2016). However, the Court notes that Petitioner pleads no specific facts to support his claims that he received ineffective assistance of counsel. Petitioner's claims in Grounds 5 through 8 are therefore denied.

### F. Cumulative effect and actual innocence

In Petitioner's final claim for habeas relief in ground 11, he incorporates Grounds 1 through 10 and claims that the cumulative effect of his claims, along with other claims not raised, demonstrate that Petitioner is actually innocent of the criminal offenses for which he was convicted. However, "[n]either cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief." *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996) (citations omitted). Further, to the extent that Petitioner is claiming actual innocence, the United States Supreme Court recently noted, "[w]e have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) (citations omitted).

In the instant case, Petitioner merely raises conclusory allegations of innocence and alludes to tangible evidence. Under federal law, the standard for showing actual innocence where a petitioner has defaulted is demanding, and the gateway to adjudication on the merits "should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 1936 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). Where a petitioner raises an independent claim of actual innocence, the standard is even higher and such claim "require[s] that the court be convinced that those new facts unquestionably establish the petitioner's innocence." *Turner v. Cassady*, No. 4:13-CV-2470 ERW NAB, 2015 WL 11216678, at *10 (E.D. Mo. Nov. 10, 2015) (citing *Cornell v. Nix*, 119 F.3d 1329, 1334 (8th Cir. 1997)). Petitioner has failed to make such a showing under either standard for the Court to review his claim of actual innocence. He has produced no evidence in support of his claim, and the Court finds that he is unable to establish his innocence. *Id.* Therefore, Ground 11 is denied.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of Charles Chambers for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED.**

**IT IS FURTHER ORDERED** that the Petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not issue a Certificate of Appealability. A separate judgment in accord with this Order is entered on this same date.

Dated this 19th day of January, 2017.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**